UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 03-227-C**

**KATHERINE ELAINE NAVA,**                                             **PLAINTIFF,**

**V.**               **MEMORANDUM OPINION AND ORDER**

**UNITED STATES OF AMERICA,**                              **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of the defendant, the United States, for summary judgment pursuant to Federal Rule of Civil Procedure 56. The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion.

**I.**      **FACTUAL BACKGROUND**

The following factual background is stated in the light most favorable to the non-moving party.

The plaintiff, Katherine E. Nava, went to the Fairdale Health Center ("FHC"), a federally funded medical facility, for treatment. On January 31, 2000, the plaintiff was seen for vomiting by a nurse practitioner, Kathy Whelan, at the FHC. Ms. Whelan suspected that the plaintiff had gall bladder problems and ordered an upper GI series. Following a normal radiology report, Ms. Whelan scheduled the plaintiff for an appointment with Dr. Mary P. Hardesty, a physician employed by the FHC. On or about February 22, 2000, Dr. Hardesty performed a full pelvic exam and a pap smear on the plaintiff and discussed the plaintiff's history of menstrual bleeding with her. On

the same date, Dr. Hardesty prescribed and administered the drug Depo Provera as treatment for dysfunctional uterine bleeding. Dr. Hardesty did not perform a pregnancy test prior to administering a Depo Provera shot because she believed that there was little to no chance that the plaintiff was pregnant since the plaintiff underwent bilateral tubal ligation in 1990 and had not missed a menstrual period. (Ltr. from Dr. Mary Hardesty to Kentucky Board of Medical Licensure, 1 (Dec. 18, 2000))

On March 13 and March 17, the plaintiff called the FHC requesting an appointment and complaining of vomiting, stomach pain, and heavy bleeding. She scheduled an appointment with Dr. Jerry R. Smith. On March 18, the plaintiff went to University Hospital Emergency Room after she developed heavy bleeding and passed vaginal tissue, which she brought with her to the ER. (Hardesty Ltr. at 1)

The laboratory reports of tests performed on the vaginal tissue show that the specimen did not contain chorionic villi[1] or fetal parts. (University of Louisville Surgical Pathology Report, March 21, 2000) The report also stated that the vaginal discharge contained focally necrotic decidua.[2] At one point, Dr. Hardesty stated that the finding of decidua in the vaginal tissue indicated that the plaintiff had miscarried. (Hardesty

---

[1] Chorion is "the highly vascular outer embryonic membrane that is associated with the allantois in the formation of the placenta." Merriam-Webster Online, http://www2.merriam-webster.com/cgi-bin/mwmednlm.

[2] "Decidua" is "the part of the mucous membrane lining the uterus that in higher placental mammals undergoes special modifications in preparation for and during pregnancy and is cast off at parturition, being made up in the human of a part lining the uterus, a part enveloping the embryo, and a part participating with the chorion in the formation of the placenta" or "the mucous membrane of the uterus cast off in the ordinary process of menstruation." Merriam-Webster Online, http://www2.merriam-webster.com/cgi-bin/mwmednlm.

Ltr. at 1)  The quantitative human chorionic gonadotropin ("HCG")[3] was 2001, revealing a very early pregnancy of less than four weeks.[4]  (Hardesty Ltr. at 1) Dr. Hardesty opined that the plaintiff's pregnancy was likely the result of a blighted ovum and was never viable.  (Hardesty Ltr. at 2)

The plaintiff filed a complaint with the Kentucky Board of Medical Licensure ("Board"), alleging that Dr. Hardesty and the FHC gave the plaintiff negligent care, causing her to miscarry a pregnancy.  In a letter to the Board, Dr. Hardesty opined that the plaintiff was not pregnant in January when she went to the FHC and that the laboratory results from the plaintiff's emergency room visit suggested that the plaintiff became pregnant after February 22.  After review, the Board found that "the diagnosis, treatment, and medical records were clearly within minimum standards."

The plaintiff also filed an administrative claim with the Department of Health and Human Services ("Department") asserting that the FHC negligently and excessively administered Depo Provera, causing a miscarriage, a hospitalization for colon and

---

[3] HCG is described as the "pregnancy hormone."  Williams Obstetrics 125 (20th ed. 1997).  Quantitative HCG measurements can allow precise prediction of the age of the fetus.  A pregnancy test is usually based on the detection of HCG. Medline Plus Medical Encyclopedia
http://www.nlm.nih.gov/medlineplus/ency/article/003510.html.

[4] In an affidavit attached to the defendant's reply to the plaintiff's response to its motion for summary judgment, Dr. Hardesty opines that the plaintiff was never pregnant and that her earlier notation of the HCG level being 2001 was due to a misreading of the findings.  Instead, she opines, the level was 2.0 and the 2001 was the control number.  Since the facts must be viewed in the light most favorable to the plaintiff,  for purposes of this motion, the court will assume Dr. Hardesty's first opinion was true.  *See* Affidavit of Dr. Mary Hardesty, April 18, 2005.

3

stomach bleeding, a severe infection, and several irregular pap smears, and leading to the plaintiff's colon surgery.  The Department denied her claim.  Subsequently, she filed this action.

## II.     LEGAL STANDARD

"Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding the motion, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Id.*  A judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

## III.    ANALYSIS

The plaintiff's claim against the United States is for damages resulting from allegedly negligent medical treatment.  To sustain such a claim under Kentucky law, a plaintiff must prove that the physician administered negligent medical care and that such care was the proximate cause of the plaintiff's injuries.  The plaintiff is unable to

meet this burden.

Generally, Kentucky law requires a plaintiff to present expert testimony to prove negligent medical treatment. A plaintiff must present expert testimony that establishes (1) the standard of skill expected of a reasonably competent medical practitioner and (2) that the alleged negligence proximately caused the injury. *See Johnson v. Vaughn*, 370 S.W.2d 591, 596-97 (Ky. 1963). To survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence. *Dunn v. Norton Hospital, Inc.*, 2004 WL 2315718 (Ky. App. Oct. 15, 2004), citing *Turner v. Reynolds*, 559 S.W.2d 740 (Ky. 1977). Two recognized exceptions permit variance from this general rule – if the negligence can be inferred or if medical experts provide sufficient foundation for *res ipsa loquitur* on more complex matters. *Baker v. Saint Joseph Healthcare, Inc.*, 2005 WL 327133 (Ky. App. Feb. 11, 2005) citing *Perkins v. Hausladen*, 828 S.W.2d 652, 655 (Ky. 1992). For the first exception, negligence can be inferred if the negligence is the type laymen with general knowledge would have no difficulty recognizing. An example of the second exception is a case in which the defendant doctor makes admissions from which one could infer that he or she acted negligently. *Id.* at *3. Neither exception applies to this case.

No facts or circumstances exist from which negligence and causation can be inferred in this case. Dr. Hardesty has not made admissions of a technical character from which one could infer negligence on her part. Actually, quite the opposite is true.

Dr. Hardesty has consistently maintained that she acted properly, as have the other physicians consulted by the Board and Department. No medical opinions in the record state that the plaintiff was pregnant when the Depo Provera shot was administered in February.[5] No medical opinions confirm the plaintiff's claim that Dr. Hardesty acted negligently in failing to administer a pregnancy test prior to administering the Depo Provera shot or that Depo Provera caused the injuries of which the plaintiff complains.

Further, the average layperson does not possess the knowledge or experience to know whether Depo Provera causes miscarriage of pregnancy or the other conditions of which the plaintiff complains. Overall, there is no proof of what caused the plaintiff's injuries – only an unsubstantiated theory that they are related to the administration of Depo Provera by Dr. Hardesty. Since the plaintiff has failed to disclose an expert witness to establish these claims and has failed to demonstrate the existence of any evidence to establish her claims beyond mere assertions, summary judgment is appropriate. Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (DE 26) is **GRANTED**.

---

[5] In her letter to the Kentucky Board of Medical Licensure, Dr. Hardesty states that the laboratory reports indicated a very early pregnancy; however, she does not state that the plaintiff was pregnant in February when the Depo Provera shot was administered. Instead, Dr. Hardesty states that the plaintiff was "possibly not even pregnant on 2/22/00." Further, she states that "[p]hysical examination definitely indicated no pregnancy at that time and the HCG suggested [the plaintiff] became pregnant after 2/22." (Hardesty Ltr. at 2)

Signed on  May 10, 2005

**Jennifer B. Coffman, Judge**
**United States District Court**